UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 15-1922(DSD/TNL)

Laurie Johnson,

       Plaintiff,

v.                                                            **ORDER**

U.S. Bancorp,

       Defendant.

    Cassie C. Navarro, Esq., Joni M. Thome, Esq. and Baillon Thome Jozwiak & Wanta, LLP, 100 South 5th Street, Suite 1200, Minneapolis, MN 55402, counsel for plaintiff.

    David A. Schooler, Esq. and Briggs & Morgan, PA, 80 South 8th Street, Suite 2200, Minneapolis, MN 55402, counsel for defendant.

This matter is before the court upon the motion for summary judgment by defendant U.S. Bank National Association. After a review of the file, record, and proceedings herein, and for the following reasons, the court grants the motion.

**BACKGROUND**

This employment dispute arises out of the termination of plaintiff Laurie Johnson by U.S. Bank on August 8, 2014. From 2006 until her termination, plaintiff worked as a paralegal in the subpoena group of the legal department under the supervision of Tom Johnson (no relation). L. Johnson Dep. at 21:20-23; T. Johnson Dep. at 13:3-10. Plaintiff gathered and produced documents

responsive to subpoenas requesting information about U.S. Bank customers.  L. Johnson Dep. at 118:19-119:10.  Plaintiff received favorable annual reviews and positive feedback from supervisors and peers during her tenure.  See Navarro Decl. Exs. A-C.

**I.    Subpoena Issue**

In May 2014, plaintiff produced five compact disks to a law firm in response to a subpoena.  L. Johnson Dep. at 119:19-120:19.  For security purposes, the disks were encrypted and password protected.  Id. at 124:5-21.  On July 9, 2014, an attorney from the law firm reported to plaintiff that one of the disks was missing.[1]  Id. at 127:8-24.  Plaintiff reported the missing disk to Paige Fitzgerald, U.S. Bank pre-litigation counsel, and asked whether it should be reproduced.  Brinkman Decl. Ex. 9.  Plaintiff then notified Johnson about the missing disk.  T. Johnson Dep. at 82:8-17.

Because the disk contained sensitive customer account data, either plaintiff or Fitzgerald contacted U.S. Bank's Privacy Office to determine whether the bank was obligated to disclose the missing disk to the Office of the Comptroller of Currency (OCC).[2]  L. Johnson Dep. at 134:1-21; Fitzgerald Dep. at 39:17-22; Brinkman

---

[1] The law firm confirmed that it received all five disks, but later lost one of them.  U.S. Bank did not blame plaintiff for the missing disk.  L. Johnson Dep. at 116:2-11.

[2] It is unclear whether Fitzgerald contacted the privacy office directly or instructed plaintiff to do so.

Decl. Ex. 22. On July 16, 2014, the privacy office sent plaintiff and Fitzgerald an Unauthorized Access Incident Reporting Form. L. Johnson Dep. at 138:4-17; Brinkman Decl. Ex. 11. Plaintiff gave the form to Johnson to complete. See Brinkman Decl. Ex. 11, at 2-3. Johnson questioned whether it was necessary to report the incident given that the disk was encrypted. Id. at 2. The privacy office responded that a report was required under bank policy even though the customer data was not at risk of being disclosed. Id. at 1.

At 8:30 a.m. on July 17, 2014, Johnson submitted the report, explaining the incident as follows:

> In response to a subpoena served on U.S. Bank, on June 6, 2014 four encrypted CDs were sent via UPS to the Slinde Nelson Stanford law firm in Seattle. The CDs contained copies of monthly statements for a business account. Initial communications with the law firm indicated that they had received all four CDs. On July 10 the law firm contacted U.S. Bank saying they were missing one of the CDs and would like a replacement.

Brinkman Decl. Ex. 13, at 1. Plaintiff subsequently reviewed the report and, at 1:21 p.m., noted in the file that the report incorrectly stated that four rather than five disks had been sent to the law firm. Id. Ex. 12, at 2. Plaintiff admits that the report accurately reported that only one of the disks was missing. Plaintiff notified Johnson of the error, but he declined to submit an amended report. L. Johnson Dep. at 176:5-10. According to plaintiff, Johnson lashed out at her when she raised the issue. Id. Plaintiff, apparently believing the report contained false

information based solely on the inaccuracy with respect to the number of disks produced, reported the error to Fitzgerald.[3] Id. at 159:14-160:6. The report was never amended.

## II. Promotion Opportunity

On June 10, 2014, plaintiff applied for a promotion within the subpoena group. Brinkman Decl. Ex. 15. Other paralegals, including Allira Sharma and Shannon Miltner, also applied for the position. L. Johnson Dep. at 214:9-19. Sharma was a full-time paralegal who also attended law school in the evening. Sharma Dep. at 8:12-20; 10:23-25. Johnson announced that Sharma was chosen for the position on July 14, 2014. Brinkman Decl. Ex.

## III. Alleged Threats/Termination

The morning of July 17, 2014, the same day Johnson filed the OCC report, Miltner told Sharma that plaintiff threatened to trick Sharma into providing legal advice and then report her for the unauthorized practice of law, ostensibly in retaliation for receiving the promotion. Sharma Dep. at 31:1-9. According to Miltner, plaintiff wanted to get Sharma kicked out of law school. Id. At 9:03 a.m. the same morning, Sharma requested a meeting with Johnson to report the alleged threats, and they met approximately one hour later. Id. at 18:11-19:22, 23:11-19; Brinkman Decl. Exs.

---

[3] According to plaintiff, Fitzgerald told her that the report was fraudulent due to the error, but Fitzgerald denies making such a statement. L. Johnson Dep. at 179:18-180:3; Fitzgerald Dep. at 52:16-23.

17, 23. Sharma reported feeling threatened and said that she did not think she could work with plaintiff going forward. Sharma Dep. at 19:3-11. After meeting with Sharma, Johnson notified Mary Baker, U.S. Bank's Director of Legal Operations, of the incident. Brinkman Decl. Ex. 23.

Johnson, Baker, and Mini Jain from the human resources department agreed that Johnson should interview Miltner and Carolyn Lieberman, each of whom heard plaintiff make the threats in separate conversations, and then interview plaintiff. Jain Dep. at 33:5-35:17; T. Johnson Dep. at 142:12-143:12, 146:16-147:2; Brinkman Decl. Ex. 18. Johnson met separately with Miltner and Lieberman on July 21, and they each reported similar threats made by plaintiff. Brinkman Decl. Ex. 18; T. Johnson Dep. at 154:16-21.

When plaintiff met with Johnson on August 6th, she denied ever making such threats. T. Johnson Dep. at 162:22-163:24; L. Johnson Dep. at 227:4-229:13; Navarro Decl. Ex. H. Johnson told plaintiff that she would be fired pending a final determination by U.S. Bank. T. Johnson Dep. at 174:25-175:4. Later the same day, Johnson and Jain discussed the matter and agreed that Miltner and Lieberman's similar accounts were more credible than plaintiff's self-serving denial. Brinkman Decl. Ex. 19. On August 8th, U.S. Bank terminated plaintiff for violating U.S. Bank's code of ethics and workplace respect policy. Id.; Jain Dep. at 56:11-57:21. Plaintiff told Jain that she believed she was terminated in

retaliation for challenging Johnson on the subpoena report. Brinkman Decl. Ex. 20. Jain confirmed to plaintiff that she was terminated due to her plan to "discredit a coworker in retaliation for her having been promoted to a position for which [she] applied." Brinkman Decl. Ex. 21.

**IV. This Action**

On February 17, 2015, Johnson filed suit against U.S. Bank in Hennepin County, alleging retaliation in violation of the Minnesota Whistleblower Act (MWA). U.S. Bank timely removed and now moves for summary judgment.

### DISCUSSION

**I. Standard of Review**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, the court views all evidence and inferences in a light most favorable to the nonmoving party.

Id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. Celotex, 477 U.S. at 324. A party asserting that a genuine dispute exists - or cannot exist - about a material fact must cite "particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). If a plaintiff cannot support each essential element of a claim, the court must grant summary judgment because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Celotex, 477 U.S. at 322-23.

**II.   MWA**

The MWA protects an employee who, in "good faith, reports a violation, suspected violation, or planned violation of any federal or state law ...." Minn. Stat. § 181.932, subdiv. 1(1). The court analyzes MWA claims under the framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Buytendorp v. Extendicare Health Servs., Inc., 498 F.3d 826, 834 (8th Cir. 2007); Cokley v. City of Otsego, 623 N.W.2d 625, 630 (Minn. Ct. App. 2001). Under McDonnell Douglas, a plaintiff must make a prima facie showing of an MWA violation by proving that (1) she engaged in a statutorily protected activity, (2) she suffered an adverse employment action, and (3) there is a causal connection between the two. Eliserio v. United Steelworkers of Am. Local 310, 398 F.3d 1071, 1078-79 (8th Cir. 2005); Cokley, 623 N.W.2d at 630. Only the first and third

factors are in dispute.

### A.  Statutorily Protected Conduct

U.S. Bank first argues that plaintiff's complaint about the OCC report is not a report of a violation of law. Plaintiff responds that she need only have a good faith suspicion of violation of a law. The Minnesota Supreme Court has rejected plaintiff's argument. See Kratzer v. Welsh Cos., 771 N.W.2d 14, 23 (Minn. 2009) (finding view that Whistleblower Act is implicated when "employee's belief that a law was violated was held in good faith" to be "simply wrong"). The conduct reported — assuming it occurred — must violate a federal or state law. Id. at 22–23; see also Chavez-Lavagnino v. Motivation Educ. Training, Inc., 767 F.3d 744, 748 (8th Cir. 2014) ("A report is protected where, assuming the facts reported by the employee are true, they would "'constitute a violation of law.'") (quoting Kratzer, 771 N.W.2d at 22).

Plaintiff alleges that Johnson's report to the OCC was a false report in violation of 18 U.S.C. § 1005. Section 1005 prohibits a bank employee from making a "false entry in any book, report, or statement of such bank ... with intent to ... deceive ... the Comptroller of the Currency." Plaintiff asserts that the report was false because it inaccurately stated that U.S. Bank produced four, rather than five, disks. Plaintiff concedes, however, that the report correctly disclosed that one disk was missing. She does

8

not identify any additional inaccuracies in the report.

Although the report did contain an inaccuracy with respect to the number of disks produced, there is no evidence in the record that the error was made with the intent to deceive the OCC. Nor could it have been given the immateriality of the error. U.S. Bank filed the report to disclose that a disk containing customer data was missing, and it did so accurately. It mattered not how many other disks were in the original production.

The court is unpersuaded by plaintiff's argument that Johnson must have intended to deceive the OCC, because plaintiff told him that five disks had been produced before he prepared the report. Even assuming that is true, there are plausible innocuous explanations for the inaccuracy. For example, Johnson may have misheard plaintiff or perhaps he simply forgot. Under the circumstances the court will not infer nefarious intent.

Plaintiff also argues that the report violated § 1005 because Fitzgerald told her that the error constituted "fraud" and that the report needed to be corrected. As noted, Fitzgerald denies making such a statement. Even if she had, however, the subjective belief of another employee does not create a statutory violation that did not otherwise occur. Therefore, plaintiff fails to show that she reported a violation or suspected violation of law, and her prima facie showing fails on this basis alone.

**B.   Causal Connection**

A plaintiff can show a causal connection between protected activity and adverse employment action through circumstantial evidence that supports an inference of retaliatory motive. Pope v. ESA Servs., Inc., 406 F.3d 1001, 1010 (8th Cir. 2005), abrogated on other grounds by Torgerson v. City of Rochester, 643 F.3d 1031 (8th Cir. 2011). Without more, a showing of temporal proximity between the protected activity and the adverse employment action fails to establish causation. Id.

Here, although the events are very close in time, plaintiff has failed to establish the required causal connection between her complaint and her termination. The timing between the two events was due to an intervening event, and thus was coincidental. See Freeman v. Ace Tel. Ass'n, 467 F.3d 695, 698 (8th Cir. 2006) ("[T]he presence of intervening events undermines any causal inference that a reasonable person might otherwise have drawn from temporal proximity[.]"); see also Scroggins v. Univ. of Minn., 221 F.3d 1042, 1045 (8th Cir. 2000) ("'[M]ere coincidence of timing' does not raise an inference of causation."). Sharma reported the threats after Johnson filed the OCC report, but before plaintiff complained about the inaccuracy in the OCC report. See Brinkman Decl. Exs. 12, 13, 17, 23. After Sharma reported the threats, U.S. Bank proceeded with its investigation and determined that plaintiff's conduct warranted termination. The record is devoid of

10

any indication that U.S. Bank considered plaintiff's complaint regarding the OCC report in making its determination.

Moreover, timing alone is insufficient to establish causation where "other evidence overwhelmingly suggests another legitimate reason for the adverse employment action." Jackson v. Flint Ink N. Am. Corp., 370 F.3d 791, 798 (8th Cir. 2004), mod. on reh'g on other grounds, 382 F.3d 869, 870 (8th Cir. 2004). U.S. Bank has provided a legitimate explanation for plaintiff's termination that is wholly supported by the evidence. Therefore, for this additional reason, plaintiff fails to make a prima facie showing, and summary judgment is warranted.[4]

**CONCLUSION**

Accordingly, based on the above, **IT IS HEREBY ORDERED** that:

1.  The motion to for summary judgment [ECF No. 17] is granted; and

2.  The case is dismissed with prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: May 10, 2016

                                            s/David S. Doty
                                            David S. Doty, Judge
                                            United States District Court

---

[4] The court notes that even if plaintiff could make a prima facie showing, her claim would fail at the pretext stage. U.S. Bank offers a legitimate, non-retaliatory reason for her termination. Plaintiff offers no evidence to establish that the stated reason is pretextual.